UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | |
|---|---|
| HOFFA ENGINEERING, LLC,              ) | |
|               Plaintiff,              ) | |
|          vs.              ) | 1:06-cv-481-JDT-TAB |
| STEVE CRANEY, RIVERSIDE              ) ELECTRONICS, LTD., RIVERSTAR, INC.,  ) AND PARCO MERGED MEDIA CORP.       ) | |
|        Defendants.              ) | |

**ENTRY ON MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT (Doc. No. 12)[1]**

This matter arises out of litigation between parties in three states over some business dealings gone awry.  An Indiana firm, the Plaintiff, has alleged that the Defendant parties, who are located in Minnesota and Maine, breached their business agreements or were unjustly enriched.  The Defendant in Maine, Parco Merged Media Corp., has filed a Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement.  (Doc. No. 12.)  Specifically, it has asked to be dismissed from the lawsuit because the court lacks personal jurisdiction or as a result of Plaintiff's failure to state a claim for which relief can be granted.  Alternatively, Parco seeks a court order requiring Plaintiff to provide a more definite statement of its claims.  (*Id.*)

---

[1]  This Entry is a matter of public record and will be made available on the court's web site.  However, the discussion contained herein is not sufficiently novel to justify commercial publication.

## I.  BACKGROUND

This litigation began February 22, 2006, when the Plaintiff, Hoffa Engineering, LLC ("Hoffa"), filed suit in Hamilton County, Indiana, Superior Court against Defendants Steve Craney ("Mr. Craney"), RiverSide Electronics, Ltd. ("RiverSide"), and RiverStar, Inc. ("RiverStar") (collectively, the "RiverSide Defendants"), and Parco Merged Media Corp. ("Parco").  It was removed to this court on March 24, 2006, on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332.

Hoffa seeks damages for breach of contracts or, in the alternative, restitution for unjust enrichment, the return of its property, and a preliminary injunction restraining the Defendants, their agents, and associates from possessing, retaining, or using its property.  (Compl. ¶¶ 6-31.)  The RiverSide Defendants in turn counterclaimed on May 25, 2006, alleging that Hoffa is holding $5,000 worth of hand tools in bailment and seeking damages for Hoffa's failure to return these tools to Mr. Craney or RiverSide. (RiverSide Defs.' Countercl. Count 1.)

Hoffa is a small Indiana firm that provides engineering and other technical services, and operates out of the home of its owner, Robert Hoffa ("Mr. Hoffa").  (Compl. ¶ 1; Pl.'s Resp. 2.)

RiverStar and RiverSide are Minnesota corporations and their principal places of business are located in that state.  (Notice Removal ¶¶ 8-9.)  Mr. Craney is a Minnesota resident who is president and the majority owner of RiverSide.  (RiverSide Defs.'

2

Answer ¶ 3; RiverSide Defs.' Countercl. ¶ 1.[2])  He is a minority owner of RiverStar.
(RiverSide Defs.' Answer ¶ 4.)

Parco is a Delaware corporation with its principal place of business in the state of
Maine.  (Notice of Removal ¶ 10.)  Scott A. Cohen, who is not a named defendant in
this case, is the company's chief executive officer.  (Corrected Decl. Cohen ¶ 2.)  The
company was incorporated in 2001 to engage in business involving the use of ultra-
wideband technology in the healthcare industry.  (*Id.* ¶ 3.)  Ultra-wideband ("UWB")
refers to a form of radio transmission that can help track equipment and persons
through a network of tags and receivers.  (Parco's Br. Supp. Mot. Dismiss 3.)

Each of these parties – Hoffa, the RiverSide Defendants, and Parco – have
different accounts about the underlying events.  (*See* Joint Proposed Case
Management Plan 3-5.)  At this stage in the litigation, the accounts are sketchy, lacking
in detail about where and when certain alleged acts occurred, or even their sequence.

**A.  HOFFA**

Hoffa contends that three agreements underlay the dispute.  First was an
agreement (the "Manufacturing Agreement"), in which Parco hired Craney to
manufacture UWB transmitter tags.  (Compl. ¶ 7.)

---

[2]  The RiverSide Defendants' Counterclaim is attached to their Answer and Affirmative
Defenses but has separately numbered paragraphs.  It begins at page ten of the Answer,
Affirmatives Defenses and Counterclaim (Doc. No. 30).

Second was an alleged subsidiary agreement (the "Product Agreement"), in which Craney hired Hoffa to provide engineering and other services necessary to manufacture the tags.  (Compl. ¶ 8.)  This agreement did not include the provision of any software.  (Decl. Mr. Hoffa ¶ 3.)  In return, Hoffa was to receive one dollar for each tag manufactured, some engineering equipment, joint ownership with Craney in a company formed to perform the Manufacturing Agreement, and other consideration. (Compl. ¶¶ 8-9.)  Hoffa contends the primary terms of this agreement were reduced to writing and memorialized by e-mails.  (*See* Compl. ¶ 11.)

Third was a separate alleged agreement between Parco and Hoffa (the "Software Agreement"), in which Parco hired Hoffa to create software needed to ensure that its finished tags worked properly.  (*Id.* ¶ 17.)  Hoffa asserts this last agreement was an oral contract negotiated during a business lunch held September 6, 2005.  (Pl.'s Resp. 2.)

**B.  RIVERSIDE DEFENDANTS**

The RiverSide Defendants deny that they formed any agreements with Hoffa. (RiverSide Defs.' Answer ¶¶ 8-13.)  They contend, in essence, that Parco was interested in having RiverSide manufacture the tag if RiverSide could create a working prototype.  (RiverSide Defs.' Countercl. ¶¶ 6, 8.)  To do so, Mr. Craney said he approached Mr. Hoffa about providing "certain software engineering services."  (*Id.* ¶ 7.) Mr. Craney and/or RiverSide then loaned Mr. Hoffa the hand tools needed to help provide these services.  (*Id.* ¶ 9.)  (The RiverSide Defendants do not explain the type of

4

"software engineering services" involved, but presumably these services were not limited to the creation of software, as that term is generally understood, inasmuch as hand tools were required.)

### C. PARCO

Parco asserts that it contracted with RiverSide in mid-2005 to manufacture and distribute its transmitter tags.  (Corrected Decl. Cohen ¶ 5.)  RiverSide was to provide the engineering and manufacturing of the tags, which RiverStar would later distribute.  (*Id.*)  According to Parco, RiverSide subsequently subcontracted with Hoffa to develop software for the tags.  (*Id.* ¶ 6.)  Parco insists that it never had any contractual relationship with Hoffa.  (*Id.* ¶ 7.)  Its only contract was with RiverSide.  (*Id.*)

Mr. Cohen maintains that he flew from the company's headquarters in Portland, Maine, to Indianapolis, Indiana, on September 6, 2005, to meet with Mr. Craney, not Mr. Hoffa, but Mr. Hoffa also attended the meeting, which lasted about two and a half hours.  (Corrected Decl. Cohen ¶¶ 8-9.)  During this meeting, Mr. Cohen said he discussed Parco's desire to have RiverSide manufacture UWB products and its desire to improve the engineering of the tags.  (*Id.*)  He delivered some UWB receivers and tags to Mr Craney, "who turned them over to Mr. Hoffa."  (*Id.* ¶ 10.)  He states that he "specifically advised Mr. Hoffa that Parco's contractual relationships would be with Riverside and ***not*** directly with Hoffa."  (*Id.* ¶ 11 (emphasis in original).)

Mr. Cohen acknowledges that he had a "limited number" of conversations with Hoffa during September and October 2005.  (*Id.* ¶ 13.)  He says, however, that Mr.

5

Hoffa initiated most of these calls to request information about the UWB tags.  (*Id.*)  On October 31, 2005, Hoffa sent tags to Parco, but Mr. Cohen states that Hoffa did this at Mr. Craney's instructions.  (*Id.* ¶ 14.)  A dispute then developed between Hoffa and RiverSide over their financial arrangements and "Hoffa subsequently stopped communicating with Mr. Craney and refused to deliver the software code to him."  (*Id.*)

Mr. Cohen asserts that on January 26, 2006, he attempted to broker a settlement between Mr. Hoffa and Riverside so that Parco could obtain the software needed for its tags.  (*Id.* ¶ 15.)  He said he exchanged e-mails with Mr. Hoffa and proposed a non-disclosure agreement that Mr. Hoffa refused to sign.  (*Id.*)  He then asked Hoffa to return Parco's hardware.  (*Id.* ¶ 16.)  Parco received eight receivers back, four of which no longer worked.  (*Id.*)

According to Mr. Cohen, the September 6, 2005, meeting was the only time that any Parco employee visited Indiana.  (*Id.* ¶ 12.)  He states that, aside from these activities, Parco conducts its business "entirely outside" Indiana, that it does not have any employees, agents, or property in Indiana, and that it does not advertise, market, or solicit sales of its products in Indiana.  (*Id.* ¶¶ 19-24.)

## II.  DISCUSSION

6

Parco seeks to be dismissed from this case under Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction, and under Rule 12(b)(6), for failure to state a claim upon which relief may be granted. Alternatively, it seeks a motion for a more definite statement under Rule 12(e). Although these motions stem from the same rule, the standard of review differs between them and will be addressed separately.

## A.  PERSONAL JURISDICTION

In federal court, a plaintiff need not include facts alleging personal jurisdiction. *Purdue Research Found. v. Sanovi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). However, once the defendant moves to dismiss a complaint under Rule 12(b)(2), the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Cent. States, S.E. & S.W. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 875 (7th Cir. 2006).

The extent of this burden depends on how the issue of personal jurisdiction comes before the court.

When the jurisdictional challenge is based on the submission of written materials only, "the party asserting personal jurisdiction need only make out a *prima facie* case of personal jurisdiction." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002) (emphasis in original). If the defendant has submitted evidence, such as affidavits, in opposition, then the plaintiff "must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Found.*, 338 F.3d at 782-83 (commenting favorably on decisions from other circuits imposing this

7

requirement).  However, in making its prima facie case, the plaintiff is entitled to a favorable resolution of all relevant factual disputes and a liberal reading of the record. *Id.* at 782.  In contrast, when an evidentiary hearing is held, the plaintiff must establish personal jurisdiction by a preponderance of the evidence.  *Id.*

Complicating these simple rules is the Seventh Circuit's instruction in *Hyatt International* that when the material facts supporting personal jurisdiction are disputed, the court "***must*** hold an evidentiary hearing to resolve them."  *Hyatt Int'l*, 302 F.3d at 713 (emphasis added).  At first glance, this command makes little sense, given the circuit's repeated declaration that factual disputes are resolved in the plaintiff's favor when evaluating whether the prima facie standard is satisfied.  *See Cent. States,* 440 F.3d at 878; *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997). However, the *Hyatt International* court did not state when such an evidentiary hearing must be held, and Federal Rule of Civil Procedure 12(d) clearly authorizes a court to order the deferral of "the hearing and determination" of  Rule 12(b) motions until trial. *See United States on Pet. of Pac. Employers Ins. Co. v. Tehan*, 252 F.2d 298, 298 (7th Cir. 1958).

Although the Seventh Circuit has not discussed in detail when deferral is appropriate, two other circuits have concluded that when the determination of jurisdiction depends on the merits of the plaintiff's claim, the trial court should allow the plaintiff to proceed upon a prima facie showing based on the written submissions.  *See Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1215 (6th Cir. 1989) (stating that in such cases "a district court may find sound reasons . . . to reserve all factual

determinations on the issue for trial); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.2 (9th Cir. 1977) (observing that when the jurisdictional facts are enmeshed with the merits, the plaintiff need only make a prima facie showing "with affidavits and perhaps discovery materials").  If the ultimate resolution of the plaintiff's claim were not postponed in these cases, a plaintiff could be evicted from the federal courthouse "where there is, in fact, no defect in personal jurisdiction."  *Serras*, 875 F.2d at 1215.  Both courts noted, however, that the prima facie showing is just a threshold determination; the plaintiff must still prove the facts on which jurisdiction is based by a preponderance of evidence at trial.  *Id.*; *Data Disc*, 557 F.2d at 1285 n.2.

The reasoning of these cases lends consistency to the Seventh Circuit's rulings on personal jurisdiction.  Cases such as *O'Hare International Bank v. Hampton*, 437 F.2d 1173, 1176 (7th Cir. 1971), which simply require a prima facie showing in personal jurisdiction disputes, would be at odds with cases such as *Hyatt International* but for the court's power to defer the ultimate determination of factual disputes until the completion of discovery or trial.  In *Central States,* the Seventh Circuit found that the plaintiff "had not met its burden of demonstrating personal jurisdiction" over the defendant.  *Cent. States*, 440 F.3d 870, 877 (7th Cir. 2006).  However, the court allowed discovery to proceed because the plaintiff had established a prima facie case of jurisdiction, based on the written submissions.  *Id.* at 878.  The decision in *Central States* acknowledges the plaintiff's ultimate burden of establishing all material issues to its claim by a preponderance of the evidence.  It also recognizes the need, in some cases, to allow a plaintiff to obtain discovery first.

In a diversity case, a federal court has personal jurisdiction over a non-resident party only if a court of the same state could exercise jurisdiction. *Steel Warehouse of Wis., Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998). Formerly, this required a two-step inquiry, first to determine if the defendant's contacts with Indiana fell under the state's long-arm provision, Trial Rule 4.4(A), and second to determine if the exercise of jurisdiction comported with the federal constitutional requirements of due process. *Purdue Research Found.*, 338 F.3d at 779. Late last year, however, the Indiana Supreme Court acknowledged that the two steps had become one. *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 964 (Ind. 2006). The 2003 amendment to Rule 4.4(A) extended the reach of state court jurisdiction to "any basis not inconsistent with the Constitutions of this state or the United States." Ind. Tr. R. 4.4(A). The court therefore has jurisdiction so long as Hoffa can show that Parco had sufficient minimum contacts with Indiana such that jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

The basic requirements of *Shoe* are a first-year law student's study but not always easy to apply. Minimum contacts are established through "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). If the defendant's contacts are continuous and systematic general business contacts, then a court may exercise "general jurisdiction"

10

over the defendant even when the controversy is unrelated to those contacts.

*Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414-15, 415 n.9 (1984).

In the absence of such continuous systematic contacts, "specific jurisdiction" may still be appropriate if the litigation is related to the defendant's contacts with the forum state. *Id.* at 414 n.8. Nor is it necessary that the defendant be present in the state, "although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable forseeability of suit there." *Burger King*, 471 U.S. at 476. As Hoffa correctly notes, even a defendant's single contact with a state may support a jurisdiction by a court of that state if that contact created a "'substantial connection' with the forum." *Id.* at 475 n.18 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

In this case, neither party has requested an evidentiary hearing, and Hoffa has alleged sufficient facts to establish a prima facie case of specific jurisdiction over Parco. Specifically, the company has submitted an affidavit from Mr. Hoffa asserting that Parco flew to Indianapolis, Indiana, where Parco and Hoffa negotiated a contract.[3] (Aff. Mr. Hoffa ¶¶ 1-2.) Inasmuch as Mr. Hoffa's claim against Parco stems from a breach of this contract or from promises made at this meeting, Mr. Hoffa's presence in Indiana and the alleged negotiations here establish the company's purposeful availment of the benefits and protections of Indiana law. Hoffa's claims arise out this meeting or are sufficiently related to the meeting. Not only does Hoffa assert a breach of a contract negotiated

---

[3] Presumably Mr. Hoffa is referring to the acts of these companies' officers, Mr. Cohen and Mr. Craney.

and formed in Indiana, the purpose of the contract was to obtain software that would be engineered in Indiana by an Indiana resident.

Parco itself further supports a preliminary finding of personal jurisdiction by submitting an affidavit from its chief executive officer, Mr. Cohen, which establishes additional contacts with Indiana.  By his admission:

●Parco supplied certain UWB products that were delivered to Hoffa –  by Mr. Cohen to Mr. Craney to Mr. Hoffa – at the September 6, 2005, business meeting in Indianapolis (Corrected Decl. Cohen ¶ 10),

●further telephone conversations between Mr. Craney and Mr. Hoffa, presumably in their respective states, occurred later that month and in October regarding the UWB tags (*id.* ¶ 13), and

●Hoffa shipped operational tags to Parco on October 31, 2005 (*id.* ¶ 14).

Parco argues that these are not significant contacts because Mr. Cohen only came to Indiana to meet with Mr. Craney and "the only business discussed was 'Parco's desire to have Riverside manufacture UWB products and Parco's desire to improve the engineering of the UWB transmitter tags.'"  (Parco's Reply 5 (quoting Decl. Cohen ¶ 9).)  Moreover, it notes Mr. Cohen's declaration he specifically advised Mr. Hoffa that they had no contractual relationship.  (*Id.* at 6.)

These arguments are, at least until an evidentiary hearing is held, irrelevant.  As a comparison of Mr. Hoffa's and Mr. Cohen's affidavits shows, the formation of a

12

contract at the September 6, 2005, business meeting is a factual dispute that goes to the merits of the claim.  On the papers before the court, this factual dispute must be resolved in Hoffa's favor.  Moreover, because the dispute is interlinked with the merits, the ultimate determination of personal jurisdiction should be postponed until trial, or at least until discovery has been completed.

The court notes, however, that even under a preponderance standard, it would find in Hoffa's favor under the facts submitted thus far.  Parco accuses Mr. Hoffa's affidavit of being "self-serving."  (Parco's Reply 6.)  Mr. Hoffa's affidavit is, while somewhat cursory, a simple sworn statement of asserted facts.  It is Mr. Cohen's statement that is marked by the "spin" sometimes attributed to politicians.

Mr. Cohen, for example, asserts that he flew to Indiana to meet with the chief executive of a Minnesota company (Corrected Decl. Cohen ¶ 8), and that during this meeting he handed Parco's UWB products to Mr. Craney who then handed them to Mr. Hoffa.  (*Id.* ¶ 10.)  Yet the implications that Parco presumably wants the court to draw from these statements – that the Indiana engineer's presence was incidental or that Mr. Cohen had no control over Parco's UWB products after handing them to Mr. Craney – are belied by Mr. Cohen's subsequent admission that he attempted to "broker" a settlement of a dispute between Mr. Hoffa and the Minnesota parties.  (*See id.* ¶¶ 14-16.)  He sent Mr. Hoffa a proposed non-disclosure agreement.  (*Id.* ¶ 15.)  After these mediating attempts failed, he asked Mr. Hoffa to return Parco's hardware.  (*Id.* ¶ 16.)  These are not the acts of a neutral third party.  They are additional evidence of contacts with Indiana.

In *Burger King*, the Supreme Court stated that a court "in appropriate cases" may consider the burden on the defendant, the forum state's interest in the dispute, the plaintiff's interest in relief, the judicial interest in the efficiency, and the shared interest of the states in furthering fundamental social policies. *Burger King*, 471 U.S. at 477. Such considerations will sometimes support jurisdiction even when a defendant's contacts seem less than would normally be required. *Id.* However, when "a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* Even then, such considerations can usually be accommodated by other means, such as choice of law or a change in venue. *Id.*

Given the showing of contacts in this case, the burden shifts to Parco to show that jurisdiction would nonetheless be unfair. Parco has not done so. In its "cursory look at these factors," Parco remarks on the undue expense that it would have in defending a lawsuit in Indiana and that Indiana has no interest in the dispute because no contract exists between its citizen and Parco. (Parco's Br. Supp. 15.) The latter reason presupposes the outcome of this lawsuit and is incorrect. Indiana has an interest in determining whether a contract exists between one of its citizens and a non-resident and an interest as well in seeing that its citizens are paid for their work. This leaves Parco's interest in avoiding the expense of litigation in Indiana as its only proffered reason for finding that the court's exercise of jurisdiction would be unfair. While the court is sympathetic to this cost, particularly as the facts suggest that Parco is a small startup company, this interest does not outweigh Hoffa's interest in relief and the

interest of Indiana and the several states in promoting commerce by ensuring the enforcement of valid business agreements.[4]

Although the court finds, on the evidence so far, that Parco had minimum contacts with Indiana and that jurisdiction over the company would not offend the requirements of substantial justice and fair play, the final determination of jurisdiction remains open because ultimately the issue is inseparably intertwined with the merits of Hoffa's case.  If, for example, Hoffa proves the formation of a contract or the elements of unjust enrichment, the company will likely have established personal jurisdiction, also. On the other hand, if Parco shows that no contract was formed and that none of its activities support a claim of unjust enrichment, the absence of personal jurisdiction will become clear.  Until discovery can be completed on the merits, an evidentiary hearing would be premature.  Hoffa has established a prima facie case of personal jurisdiction.

## B.  FAILURE TO STATE A CLAIM

The standard for a Rule 12(b)(6) motion differs from a 12(b)(2) in that the sufficiency of the litigant's case is generally judged merely from the complaint. *Hernandez v. City of Goshen*, 324 F.3d 535, 537 (7th Cir. 2003); *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002).[5]  The court must accept as true

---

[4]  The court is not indicating by this comment whether a valid business agreement in fact existed between Parco and Hoffa.

[5]  Documents attached to a complaint become part of the complaint, as do some documents, such as a contract, which may not be part of the complaint physically but are nonetheless an essential part of the plaintiff's complaint.  *See Tierney v. Vahle*, 304 F.3d 734,
(continued...)

all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *Cole v. U.S. Capital*, 389 F.3d 719, 724 (7th Cir. 2004); *Hentosh v. Herman M. Finch Univ. of Health Scis./Chi. Med. Sch.*, 167 F.3d 1170, 1173 (7th Cir. 1999). Dismissal is appropriate only when it is clear that the plaintiff can prove no set of facts consistent with his complaint that would entitle him to relief. *Centers v. Centennial Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005).

As the Seventh Circuit has repeatedly reminded litigants, Rule 12(b)(6) must be applied in the context of the liberal federal rules for notice pleading. *See Hefferman v. Bass*, 467 F.3d 596, 598-99 (7th Cir. 2006); *McDonald v. Household Int'l, Inc.*, 425 F.3d 424, 427 (7th Cir. 2005); *Cler v. Ill. Educ. Ass'n*, 423 F.3d 726, 729 (7th Cir. 2005). Rule 8(a) requires only a short and plain statement of the grounds for jurisdiction, a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for judgment providing the relief sought. Fed. R. Civ. P. 8(a).

This is barebones pleading that merely seeks to provide the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *Cler*, 423 F.3d at 729. Except for a few claims such as fraud and mistake, *see* Fed. R. Civ. P. 9(b), notice pleading does not require the plaintiff to plead facts or legal theories. *Hefferman*, 467 at 599; *see also McCullah v. Gadert*, 344 F.3d 655, 659 (7th Cir. 2003). Nor must the plaintiff make allegations regarding every element of its legal theory for relief.

---

[5](...continued)
738-39 (7th Cir. 2002). Aside from such documents, a court must confine its review to the pleading or convert the motion to a motion for summary judgment under Rule 56. *Id.*

16

*Hefferman*, 467 at 599; *Williams v. Seniff*, 342 F.3d 774, 792 (7th Cir. 2003); *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999).  All that is necessary is that the claim contain sufficient facts so that the court and defendant can "understand the gravamen of the plaintiff's complaint."  *Doherty v. City of Chicago*, 75 F.3d 318, 326 (7th Cir. 1996).  A complaint must provide "the bare minimum facts necessary" to give the defendant notice of the claim and enable the defendant to file an answer.  *Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005).

Parco correctly states the standard for a motion to dismiss but ignores its interplay with the requirements of simple notice pleading.  For example, it seeks the dismissal of Hoffa's breach of contract claim because, it asserts, Hoffa failed to provide any details regarding the alleged Software Agreement.  (Parco's Br. Supp. 16.)  The underlying premise – that Hoffa is required to provide details beyond a few facts showing the basis for its claim – is wrong.  Parco also misstates the holding of the case it cites to support its erroneous premise.  Parco asserts that the district court in *King v. Uniroyal Plastics Co.*, 1990 WL 258382, at *1-3  (N.D. Ind. Sept. 18, 1990), granted a defendant's motion to dismiss because the plaintiff "failed ***to establish*** the existence" of an employment contract or protected job interest.  (Parco's Br. Supp. 16 (emphasis added).)  This is incorrect.  The *King* court granted defendant's motion because the plaintiff "failed ***to allege*** that she [had] anything other than an 'employment at will' relationship."  *King*, 1990 WL 258382, at *2 (emphasis added).  This wording difference is not insignificant.  It marks the boundary between Rule 12(b)(6), which tests the sufficiency of a complaint, and judgments on the merits, such as summary judgment

under Rule 56.  *See Brown*, 398 F.3d at 914 (stating that to survive a Rule 12(b)(6)

motion, "the plaintiff does not have to 'show' anything; he need only allege").

In this case, Hoffa's Complaint was woefully short on details.  The pleading

merely states that a software contract existed between it and Parco, and no information

is provided about when and where this contract was formed.  However, it does provide

other information from which Parco could determine – and did determine, as is evident

from its subsequent briefs and the declaration of its chief executive officer – the basis

for Hoffa's claim.  This additional information included the assertions that the RiverSide

Defendants had entered into a contract with Parco to manufacture a certain product,

and that Hoffa's claim against Parco stemmed from an alleged agreement with Parco to

provide software for that very product.  Under the circumstances, these details provided

sufficient information for Parco to understand the nature of Hoffa's breach of contract

and unjust enrichment claims – and to respond to them.

Hoffa also supplied sufficient information about its demand for the return of its

property.  Specifically, it alleged that Parco was holding six items created as a result of

Hoffa's agreements with the RiverSide Defendants and Parco, and that these products

contained software or intellectual property belonging to Hoffa.  (Compl. Count IV.)

Parco does not contend that it is unable to identify these goods.  (If it were unable to do

so, then a dismissal with leave to amend or an order to provide a more definite

statement would be appropriate.)  Rather, Parco asserts that this claim must be

dismissed because no cause of action for unlawful detainer exists under Indiana law.

(Parco's Br. Supp. 18; Parco's Reply 13.)  This is incorrect.  Replevin and detinue for

the wrongful taking or detention of personal property have long been recognized in Indiana, and the common law actions are now codified.[6]  *See* Ind. Code § 32-35-2-1; *accord Robinson v. Valladares*, 738 N.E.2d 278, 282 (Ind. Ct. App. 2000).  (Parco also appears to argue that because the alleged products are being held in Maine, that an unlawful detention action would have to be filed there, rather than in Indiana.  (Parco's Br. Supp. 18.)  This is a jurisdiction argument, which the court has addressed above.)

Parco argues also that Hoffa's unjust enrichment claim must be dismissed because it is "specifically tied to the 'Products Agreement,' to which Parco was not a party." (Pl.'s Br. Supp. 17.)  This description (but not the consequence) is correct. Hoffa responds that it is seeking restitution for Parco's unjust enrichment for the services it provided in the belief that there was a Software Agreement.  (Pl.'s Resp. 9.) But this is not how its Complaint is worded.  It states that "Craney and Parco have been unjustly enriched in that it has not paid for the work performed by Hoffa under the Products Agreement, yet has received the benefit of all services related thereto." (Compl. ¶ 24.)  If indeed Hoffa is seeking restitution for the services it provided under the Software Agreement – and it is Hoffa that asserts that these are separate agreements – then Hoffa should seek leave to amend the Complaint.

---

[6]  Parco also states that the Indiana Supreme Court has not addressed an unlawful detainer claim since it decided *Baer v. Martin*, 2 Ind. 229 (Ind. 1850).  (Parco's Reply 13.) Although replevin has since been more frequently a topic of lower appellate courts, the Indiana Supreme Court discussed replevin and the *Baer* decision in three subsequent cases between 1879 and 1885.

However, the issue for the court is whether, as a matter of Indiana law, a subcontractor can seek restitution for unjust enrichment against the owner who contracted for the work.  (Given the alleged failure of the RiverSide Defendants to establish a joint venture to administer the Products Agreement (*see* Compl. ¶ 9), Hoffa would be a subcontractor on this agreement.)  Neither party has provided any argument or cited any authority on this issue.  The court notes simply that Indiana recognizes such claims under certain circumstances.  *See State v. CCI, LLC*, 860 N.E.2d 651, 653 (Ind. Ct. App. 2007) (noting that Indiana courts judge a subcontractor's claim against a property owner by considering whether the owner impliedly requested the subcontractor to do the work, the expectations of pay by the parties, any wrongs perpetuated by the owner, and the owner's involvement in the work).  The court does not find, on the basis of the pleadings, that Hoffa's unjust enrichment claim must be dismissed.

Lastly, Parco argues that a request for damages is an acknowledgment of an adequate remedy at law and therefore precludes injunctive relief.  This badly misstates the law.  *See, e.g.*, Restatement (Second) of Torts § 951 (stating that in an action for injunction, a court "may, in addition to or in lieu of injunction," award damages); Restatement (Second) of Contracts § 345 (stating that a court, among other remedies, may order specific performance or enjoin its non-performance and require restoration of a specific thing to prevent unjust enrichment).  The availability of damages simply does not mean that a party's remedy is necessarily adequate at law.

## C.  MOTION FOR A MORE DEFINITE STATEMENT

In the alternative, Parco has asked the court to order Hoffa to provide a more definite statement of its claims.  As a general rule, motions for a more definite statement are disfavored.  *See, e.g.*, 61A Am. Jur. 2d Pleading § 475; *accord Greater N.Y. Auto. Dealers Ass'n v. Envtl. Sys. Testing, Inc.*, 211 F.R.D. 71, 76 (E.D.N.Y. 2002); *Cumis Ins. Soc., Inc. v. Peters*, 983 F. Supp. 787, 798  (N.D. Ill. 1997); *Frederick v. Koziol*, 727 F.Supp. 1019, 1020-21 (E.D. Va. 1990).  Rule 12(e) was an outgrowth of the traditional bill of particulars, which was at odds with modern notice pleading.  5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1374 (2d ed. 1990).

In the 1946 amendment, the Rule's references to a bill of particulars was deleted with the aim of limiting the motion to cases in which the movant could not be reasonably required to respond.  Fed. R. Civ. P. 12, advisory committee's note (1946 amend.).  Since then, courts usually require a plaintiff to provide a more definite statement only when the defendants must guess about the conduct or contract that is the basis of the complaint.  *See, e.g.*, *Cumis Ins. Soc.*, 983 F. Supp. at 798.  To further limit parties from using a motion for a definite statement to delay proceedings, test the merits of the complaint, or narrow the issues, the Rule requires the moving party to "point out the defects complained of and the details desired."  Fed. R. Civ. P. 12(e).

Here, Parco has not cited particular defects in the complaint or the details it requires to respond.  In its main brief, it merely asserts that Hoffa's counts "are too vague and ambiguous to allow a proper response," and in reply, the company asserts that it "has no idea to what contract Plaintiff is referring; there is no contract."  (Parco's Br. Supp. 20; Parco's Reply 14.)  However, as its brief and the declaration of Mr. Cohen

21

make clear, Parco is aware of the business dealings – specifically its contract with Parco, the September 6, 2005, meeting in Indianapolis, and Hoffa's work in relation to its products – that have given rise to Hoffa's claims.

Parco is not really seeking details necessary to form a response.  Rather, it is contesting the merits of Hoffa's lawsuit.  It is alleging that, contrary to Hoffa's assertions, no contract was ever formed.  Yet this itself is a response to Hoffa's breach of contract claim.  Moreover, Parco has not explained to the court how this understanding, that no acts occurred that could establish the formation of an express or implied contract, prevents the Defendant from responding to the remainder of Parco's complaint.  Its uncertainties about the details of Hoffa's allegations and legal theories are more appropriately addressed through interrogatories, requests for admissions, and other methods of discovery under the Rules.

### III.  CONCLUSION

For the reasons discussed above, the court **DENIES** Defendant Parco's Motion to Dismiss, or, in the Alternative, Motion for a More Definite Statement (Doc. No. 12).

ALL OF WHICH IS ENTERED this 12th day of March 2007.

_____
John Daniel Tinder, Judge
United States District Court

22

Copies to:

Magistrate Judge Tim A. Baker

Philip Adam Davis
Davis & Sarbinoff LLP
adavis@d-slaw/com

Kenneth P. Reese
Lewis & Wagner
kreese@lewiswagner.com

Shannon Lee Lgosdon
Lewis & Wagner
slogsdon@lewiswagner.com

William C. Crenshaw
Powell Goldstein LLP
wcrenshaw@pogolaw.com

Adam Arceneaux
Ice Miller LLP
adam.arceneaux@icemiller.com

Elizabeth T. L. Raymond
Ice Miller LLP
elizabeth.raymond@icemiller.com